Stevenson et al. *v.* Westfall.

JAMES F. STEVENSON and his wife, late MARY ELIZA JOHNSON, Plaintiffs in Error, *v.* JOHN W. WESTFALL, Defendant in Error.

18 209
157 538,
18 209
187 ¹437

ERROR TO McDONOUGH.

Females attain majority at eighteen years of age.
The statute of limitations, affecting writs of error, does not make any exception in favor of a party who may have been out of the state, or beyond seas.

THIS was a proceeding commenced by Westfall, by petition, for partition, in the McDonough Circuit Court, stating that Mary Eliza Johnson was an infant, and entitled, with others, also minors, to one-eighth of the property to be partitioned, and praying process, which was made returnable on the 22d of October, 1849. The petition was amended on the 26th of February, 1850. There was a guardian *ad litem* appointed for the minors, and a decree, *pro confesso,* was taken as to a part of the defendants. The decree was taken at October term, 1850, of the McDonough Circuit Court, upon the report of the commissioners appointed to make partition. The writ of error in this case was sued out on the 24th of November, 1856.

At the present term, Westfall, the defendant in error, filed two pleas. First, after stating the date of the judgment, and the date of the writ of error, that the said plaintiff in error, Mary E., against whom the decree was rendered, was born on the twenty-second day of January, A. D. 1833, and was, at the time the decree in the circuit court was rendered against her, sole, unmarried, and a minor under the age of eighteen years, and that she became and was of full and lawful age, to wit, of the age of eighteen years on the twenty-second day of January, A. D. 1851, and was then sole, and so continued until the first day of April, 1851, when she was married to her present husband, and that the writ of error in this case was not sued out until after the expiration of five years from the passing and rendering of said decree complained of, nor until five years after the said Mary E. arrived at the age of eighteen

14

years; therefore the plaintiffs in error were barred by the statute, etc., etc. Second, that the plaintiffs ought not to have their action, because the final decree herein rendered, for which this writ was prosecuted, was made and entered in the McDonough. Circuit Court at October term, 1850; that this writ of error was issued on the twenty-fourth day of November, A. D. 1856; and that more than three years have elapsed since the rendition of the decree by the circuit court before the issuing of this writ; and that plaintiffs in error have not petitioned the said circuit court touching the matter of said decree, and, therefore, the plaintiffs in error are barred, etc.

To these pleas there was a demurrer, averring that the pleas were insufficient to bar the writ of error, and a replication, that the said defendant was out of the state a long space of time, to wit, the space of one year after the said Mary E. attained to the age of eighteen years, and before the issuance of the writ of error in this case, etc.

To this replication there was a demurrer and joinder. This opinion was pronounced upon these pleadings.

J. S. BAILEY and C. L. HIGBEE, for the Pleas.

D. A. SMITH, Contra.

CATON, J. The only question of interest in this case arises on the plea of the statute of limitations. That plea alleges that more than five years have elapsed since the rendition of the judgment, and since the plaintiff in error (who is a woman) attained the age of eighteen years. To this plea a demurrer is filed, and thus, for the first time, is the question presented to this court, whether, under our statute, females attain their majority at the age of eighteen years, or like males, not until they are twenty-one years of age. Although I cannot see how it is possible to give the statute but one construction, yet I know it has always been a doubtful question with the profession, the bar being, perhaps, nearly equally divided on the question, and, what is a little singular, each one seems to have such clear views, that it seems strange how any one can think differently. At least, such I know was the case when I was at the bar, and I have no reason to suppose that it is not the case now. This simple fact, more than any argument I have ever heard or thought of, has led me to believe that it is really a very doubtful question how our statute should be decided. And I feel well convinced that nothing which I can say, or which can be said on the subject, can carry conviction to the minds of all, that we are giving the true construction to the statute.

By the common law of England, which has been adopted in this state, the minority of both males and females continues till they attain the age of twenty-one years. This must control, unless our legislature has provided otherwise, by affirmative legislation. This we think has clearly been done. In several distinct portions of our statutes, distinct provisions are made terminating particular disabilities of females at the age of eighteen years, and of males at twenty-one years of age; but the provision relied upon for changing the general rule of the common law on the subject, in the case of females, is found in the concluding words of the eighth section of the statute concerning guardian and ward. It is in these words: "And the minority of females shall cease at the age of eighteen years." This language is of itself as broad as it was possible to employ, to express the general intention of the legislature to terminate the minority of females at that age, unless they had added the words, *for all purposes;* nor would these words have enlarged the meaning of the expression used, but could have only served the purpose of excluding an inference, which has been drawn in argument from the preceding part of the section, that they were only intended to apply to the particular case previously provided for, as has been done in several other provisions of the statute. The former part of the section authorizes guardians to collect debts, etc., due their wards, to loan their money, and then proceeds: "And said guardians shall also have power to lease the real estate of the ward upon such terms and for such length of time as the court of probate shall direct: *Provided,* Such leasing shall never be for a longer time than during the minority of the ward; and the minority of females shall cease at the age of eighteen years." Now it is undoubtedly true that the subject which occupied the legislative mind in the enactment immediately preceding, was the leasing of the estates of minors, and hence it is argued that the closing provision, terminating the minority of females at the age of eighteen, was only intended to apply so far as it could affect that particular subject; thus giving the section the same meaning as if the proviso had read as follows: "*Provided,* No such lease shall extend beyond the time when such minor, if a male, shall attain the age of twenty-one years; or if a female, the age of eighteen years." It seems to me, if such had been the intention of the legislature, they would have used words something like those which I have suggested, or some others clearly expressing their meaning, rather than adopt that broad and comprehensive language which really embraces all cases, and exhausts the subject as to when the minority of females shall cease. But why restrict this provision to the case of leasing the estates of wards, when the same sec-

.tion provides for the collection of debts and loaning the money of wards by their guardians? Shall we say that the guardian may continue to collect the debts and loan the money of the female after she has attained the age of eighteen years, when the same section which confers upon him that authority over her estate, declares that her minority shall cease at that age? Have we not as much reason in saying that they intended to apply the rule to one subject as to the other? Did they suppose that the female was better qualified to manage her real than her personal estate? That she could lease her land better than she could collect her debts and loan her money, at the age of eighteen years? I cannot believe, in the very face of the language which they have used, that such was the intention or the understanding of the legislature. This reasoning leads us further back into this same act, and suggests the inquiry whether this provision was not also intended to apply to other sections as well as this. We must observe that this act is devoted to the subject of guardian and ward; and, of all others, is the most fitting place to provide generally when infancy, or minority, shall cease. I think that nobody will deny that this provision means something, and that, at least, it terminates both the guardianship and the infancy, so far as the leasing of the real estate of the female is concerned, when she attains the age of eighteen years. For this purpose, at least, she attains her majority at that age. There are reasons which, to my mind, are conclusive to show that this provision was intended to apply to the second and third sections of the act, which authorize the appointment of guardians for minors over the age of fourteen years. The second section authorizes the probate court to call an orphan minor over the age of fourteen years to choose a guardian, and if the minor refuses to make a choice, to appoint a guardian, as if such minor was under the age of fourteen years. The third section provides, that when a minor, having a father living, shall have any estate not derived from the father, the court may call the father before it to show cause why a guardian should not be appointed for the minor; and if the father be a proper person, to appoint the father such guardian; and if not, then such person as the minor may choose, if over the age of fourteen years, or, in default of a choice, to appoint a fit person guardian. Now, what is meant by the word minor, as used in these sections, when applied to females? Is it a female under the age of eighteen years, or twenty-one years? Has not the legislature said, in the same act, that "the minority of females shall cease at the age of eighteen years?" and when they use the word minor, in other parts of the act, do they mean one whom they have here said is not a minor? We must presume that the legislature,

when treating of this subject, intended to form something like a harmonious system, and give it some appearance of congruity, at least. Let us now look at some of the duties and liabilities of guardians, as provided in this same act, and see whether it is possible that they intended that these duties and liabilities should continue after the female ward had attained the age of eighteen years, and after the power to lease her land or collect her debts had ceased. The ninth section of the act makes it the duty of the guardian to provide for and superintend the education of the ward, and, for this purpose, the rents and profits of the ward's estate, and interest of the ward's money, shall first be applied. Now, does this duty continue after the female arrives at the age of eighteen years? That cannot possibly be, for she has already been put in the absolute control of those very rents and profits, which, during the minority, the guardian is required to apply toward her support and education. The glaring inconsistency is too apparent to require comment. Again, can the guardian, under the tenth section of the act, apply to the circuit court for the sale of her real estate, either for her support or for reinvestment, after she has attained the age of eighteen years, and has been put in possession of her real estate and vested with power to lease it? If so, then we may find the ward leasing the estate, it may be, for twenty years, while the guardian is selling the fee. Can it be that the legislature intended to introduce such confusion into such important interests and relations? And yet it must be so, if she is still a minor, and the guardianship still continues. But the position of the guardian is still more embarrassing, and, I may say, absurd, if this declaration, at the end of the eighth section, is made to apply to all the provisions of that section, by which the guardian would be deprived of the power to collect the debts and loan the money of the ward, as well as to lease her land.

I shall now advert to several provisions of other portions of our statutes, which, I think, powerfully fortify the conclusion that it was the intention of the legislature to make this provision general, as its language imports. I will first refer to the apprentice act, the latter part of the first section of which is as follows: "And all minors above that age (fourteen years) may be so bound, with their consent, males until they arrive at the age of twenty-one, and females until they arrive at the age of eighteen years, or for a shorter term, as herein provided."

The first section of the marriage act is as follows: "All male persons over the age of seventeen years, and females over the age of fourteen years, may contract and be joined in marriage: *Provided,* In all cases where either party is a *minor*, the consent of parents or guardians be first had, as hereinafter

required." The ninth section provides that no person shall be joined in marriage, unless their intention to marry shall have been published as there provided, or unless they shall have obtained a license for that purpose; and the tenth section provides that such license shall be obtained from the clerk of the county commissioners' court, and declares, "but no such license shall be granted for the marriage of any male under the age of twenty-one years, or female under the age of eighteen years, without the consent of his or her father, or if he be dead or incapable, of his or her mother or guardian, to be noted in such license." Now what does the word *minor* mean, as used in the first section, when applied to a female? Does it mean that one between the ages of eighteen and twenty-one years shall obtain the consent of parent or guardian? Or is it there used in the sense indicated in the eighth section of the guardian and ward act? It may be said that the tenth section explains its meaning. If that be true, it is equally true that the provision in the tenth section was not intended as an explanation of its meaning, but is rather used as synonymous with the word minor in the first section; for the provision of the tenth section, requiring the consent to the issuing of a license where the female is under eighteen, has no reference to, and does not cover the case, where there has been a publication made, and no license is required; so that the explanation could only apply to a portion of the cases, and if, without such explanation, the clerk would have had to obtain the consent of parent or guardian, where the female was under twenty-one years of age, then such consent is still required when the marriage is solemnized under the authority of a publication only. Is it true, then, that the parent or guardian may prohibit the marriage by withholding the consent in the one case, and not in the other? I rather think that the word minor was used in the sense indicated in. the eighth section of the act concerning guardian and ward, and that, too, upon the intention that that section should, in all cases, terminate the minority of females at the age of eighteen years.

I will now refer to the first section of the statute of wills, which provides that "every person aged twenty-one years, if a male, or eighteen years, if a female, or upward, and not married, being of sound mind and memory, shall have the power to devise," etc. Here we find the female at eighteen vested with the same power to devise which is conferred upon the male at twenty-one.

It is not denied that these several statutes, last referred to, do not, of themselves, make a general rule of law fixing the limit of the minority of either males or females; but I think

they do afford a pretty clear indication of the understanding of the legislature on that subject, and of what was the legislative intent in passing the provision first referred to. Here capacities are conferred and exemptions secured to which adults alone are generally deemed entitled, and which in no instance are provided for males under twenty-one years of age, and, perhaps, in no country are provided for infants wherever any provision is made upon the subject. This indicates that, in the opinion of the legislature, females at the age of eighteen possess as much discretion as males at the age of twenty-one, and are then fitted to attain their majority ; and if this be so, we find a sufficient reason for the use of the broad and comprehensive language used in the first act quoted; the language of which we are thus enabled to understand, or are rather prevented from misunderstanding, from its being found in a proviso. Although in a proviso, its closing position, and the punctuation, show to my mind that it was intended to give it a general meaning, and not to confine it to the subject matter immediately preceding, which, it is admitted, is the general rule for construing a proviso ; but this, like all other technical rules for construing statutes, must give way to that broader and universal rule which requires us to give effect to the legislative will, when that can be gathered from the language used and its connections.

I have but one word more to add in relation to the several provisions of the statute above referred to, making special provisions for females when they attain the age of eighteen years, and that is, that it cannot be said that those special provisions were made for the purpose of making exceptions to the general rule, and because the legislature supposed that, in those particular instances, females at eighteen should be exempted from the general disability of minority, which they suppose would attend them to the age of twenty-one. Any such inference is rebutted by the fact that, in every one of those instances, the same provision is made, and in the same connection, for males when they shall arrive at the age of twenty-one years; which, it is admitted on all hands, is the period when the minority of males ceases.

In all my researches, I have found but one provision militating in the least against the conclusion that it has always been the undoubted understanding that the minority of females ceases, for all purposes, at the age of eighteen years ; and that is found in the twenty-third section of the statute of wills. It is as follows: "Persons of the age of seventeen years, of sound mind and memory, may be appointed executors; but should any person under the age of twenty-one years be appointed executor or executrix, the court of probate shall appoint some

proper person to manage and control the estate under the direction of the court, until such executor or executrix appointed by the will shall attain the full age of twenty-one years; and all such persons appointed to take charge of the estate during the minority of such executor or executrix shall, for the time being, give bond, with security, as in other cases." Now, here, an executrix under twenty-one years of age is undoubtedly called a minor, but I think it may be fairly said that she is called a minor executrix, and not a minor generally. For that special purpose she is considered a minor, and it does not necessarily follow that she was considered a minor for all purposes. The legislature may well have supposed that peculiar qualifications and maturity of judgment were necessary to settle the estate of a testator, and hence the reason of the provision. Suppose the age fixed upon had been twenty-five, instead of twenty-one, for both executors and executrixes; for that special purpose both might well have been called minors, until they should attain that age. But conceding all the weight that can reasonably be asked for this isolated expression, and we cannot think it entitled to such influence as to overturn all the other legislation on the subject.

The question is an important one; vast interests may depend upon its solution, which has prompted us to bestow upon it the most anxious consideration, distrustful, constantly, of our own convictions, from the fact that we believe different views are entertained by those at least as well qualified to form correct conclusions on the subject as we can claim to be; yet, as the duty of finally deciding it has devolved upon us, we cannot shrink from discharging that duty in accordance with our own convictions of the true construction of the statute.

I may remark, in conclusion, that it is not a little singular, that this legislation, which has remained unchanged for about thirty years, and has been in active and constant application in every part of the state during all that time, the true construction of which has been a constant theme for discussion and dispute, is now for the first time brought before this court in such a form as to require its decision; and it is scarcely less remarkable, in view of all the circumstances, that it has not long since been set at rest by the legislature.

We are of opinion that the disability of the plaintiff in error ceased when she arrived at the age of eighteen years, and that the plea of the statute of limitations, which is interposed, presents a good bar to this writ of error, and that the demurrer thereto must be overruled.

After we announced our decision overruling this demurrer, the plaintiff filed a replication, to which the defendant has filed a demurrer, which can be disposed of in a very few words.

The replication states that the plaintiff in error was out of the state for a long space of time, to wit, for one year after she attained the age of eighteen years, and before the issuing of this writ, wherefore, etc.  A reference to the statute limiting writs of error to five years, does not make any exception where the party is out of the state or beyond seas, as is the case of many other statutes of limitations.  It is as follows: " A writ of error shall not be brought after the expiration of five years from the passing of the judgment complained of; but when a person thinking himself aggrieved by any decree or judgment that may be reversed in the supreme court, shall be an infant, *feme covert, non compos mentis,* or imprisoned, when the same was passed, the time of such disability shall be excluded from the computation of the said five years."  It is enough, here, to repeat that the supposed disability set up in the replication is not made an exception in the statute, and that, consequently, it did not suspend the running of the five years.  The demurrer to the replication must be sustained.